1997 ME 103

**Nora MURPHY, et al.**

v.

**James R. MURPHY**

v.

**Louise H. MURPHY.**

Supreme Judicial Court of Maine.

Argued Jan. 7, 1997.

Decided May 16, 1997.

John C. Howard (orally), Turesky & Howard, Portland, for Louise Murphy.

William P. Shumaker (orally), Holman & Shumaker, Yarmouth, for Nora, Caitlin and Daniel Murphy.

Martin Schindler (orally), Martin Schindler, P.A., South Portland, for James Murphy.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

[¶ 1] Louise Murphy appeals from the judgment entered in the Superior Court (Cumberland County, Saufley, J.) after a nonjury trial requiring her to pay her minor children $18,100 that her ex-husband, James Murphy, borrowed from the children. James Murphy cross-appeals asserting that the court erred when it ordered him to pay a portion of his children's attorney fees as a result of his breach of a fiduciary duty owed the children. The children also cross-appeal contending that the court erred when it refused to order James to pay all their attorney fees. We affirm the judgment.

[¶ 2] James and Louise Murphy were divorced in 1992. During their marriage their children received gifts of cash and stock. Although the couple understood that the funds belonged to the children, they borrowed the funds for different purposes. James and Louise took one loan of $23,832 from the children in September 1988 to purchase real property in Yarmouth and another loan of $18,600 to purchase several undeveloped lots in Batavia, Illinois. The couple repaid the loan for the Yarmouth purchase in April 1989. Shortly thereafter James borrowed $20,000 of the repaid "Yarmouth" funds to purchase a client list for his business. Sometime during the couple's separation but before the divorce, James withdrew another $11,000 from the children's Stein Roe account and used the funds for miscellaneous personal expenses such as attorney fees.

[¶ 3] In February 1992 James and Louise entered into a divorce settlement agreement. The agreement provided that James was ob-

ligated to pay "all debts arising from, or relating to, [his] business ... [and] all debts incurred by him since the separation of the parties." James surrendered to Louise his interest in all the couple's real property. The parties agreed to transfer to an independent trustee for the children: "Assets having a value equal to the value of 7% of the equity in the Yarmouth property; and equal to a 14.5% of the equity in the undeveloped lots in Batavia, Illinois...." The agreement also provided that the parties would turn over "the children's Stein Roe account or its proceeds." At the signing of the agreement, Louise requested that James sign a separate promissory note to the children because of his Stein Roe withdrawal. James refused to sign the note.

[¶ 4] The settlement agreement was incorporated into but not merged with the divorce judgment. After the divorce, Louise concluded that the judgment required her to pay 7% of the net equity in the Yarmouth property, amounting to only $1,900 due to the substantial mortgage debt on the property. The Batavia property was not so encumbered and she determined that 14.5% of the Batavia equity was approximately $32,000.[1]

[¶ 5] In February 1993 Louise instituted an action on behalf of her three children against James alleging that he breached his duty as the trustee of the children's accounts when he failed to repay the $11,000 withdrawal from the Stein Roe account. James responded by naming Louise as a third-party defendant, alleging that she had acted with him in regard to the children's accounts and was jointly responsible for his failure to repay them. In May 1994 James filed a motion to enforce and amend the divorce judgment, contending that Louise had failed to repay the $20,000 debt to the children as required by the judgment. Louise responded by filing an "Additional Post–Divorce Motion" seeking the $20,000 from James on the ground that she had properly paid the children but that

the judgment required him to pay her that amount. By an agreement of the parties, the court reformed her motion so that it stated a claim by the children against James for $20,-000. The court ordered that these motions be consolidated with the children's action against James.

[¶ 6] After a nonjury trial, the court entered a judgment in favor of the children, concluding that James was responsible for the $11,000 debt on the children's Stein Roe account. It determined that the parties intended Louise to pay the entire $20,000 debt even though the strict terms of the judgment required her to pay only $1,900. Finally, the court found that James had breached his fiduciary duty to the children and ordered him to pay $10,000 of the children's attorney fees.

I.

[¶ 7] Louise contends that the court erred when it ordered her to pay the $18,100 still due on the $20,000 debt. She argues that James borrowed $20,000 to purchase a client list for his business and that the judgment incorporating the couple's settlement agreement requires him to pay debts incurred for business purposes. We disagree.

[¶ 8] A settlement agreement that is incorporated into a divorce judgment becomes part of the judgment of the divorce court. *Wardwell v. Wardwell,* 458 A.2d 750, 752 (Me.1983) (citations omitted). "[T]he court has the inherent and continuing authority to construe and clarify its judgment when that judgment is ambiguous." *MacDonald v. MacDonald,* 582 A.2d 976, 977 (Me.1990) (citations omitted). A court's construction of a divorce decree, like any judgment, must be consistent with the language read as a whole and objectively supported by the record. *Id.*

[¶ 9] Here, the judgment incorporating the settlement agreement is ambiguous

---

1. Prior to the settlement agreement, Louise hired an accountant to determine the extent of her personal investments in the Yarmouth and Batavia properties, along with other properties purchased by the couple during their marriage. The accountant included in his report the extent of the children's investment in the Yarmouth and

Batavia properties through the loans taken by James and Louise. The report estimated that the children's monies supplied approximately 7.4% of the purchase price for the Yarmouth property and approximately 14.5% of the purchase price for the Batavia lots.

because of its handling of the couple's $20,-000 debt to the children. Contrary to Louise's contention, the provision in the incorporated agreement requiring James to pay the debts arising from his business does not apply to the debts to the children because a separate section, subsection III(E)(3), is devoted to the payment of the debts owed the children.

[¶ 10] Similarly, the provision in subsection III(E)(3) that relates to the payment of the Yarmouth debt does not provide for full payment of that debt. According to Louise's own interpretation of those terms, she is required to pay only $1,900 of the Yarmouth debt, or 7% of the "net equity" in the Yarmouth property.

[¶ 11] The court concluded that the failure to provide for full payment of the Yarmouth debt was a result of a drafting error, and determined that had the error not occurred, the incorporated agreement would have provided for satisfaction of the debt by paying an amount equal to 7% of the full value of the Yarmouth property. The court heard testimony regarding: (1) the history of the borrowings and their relation to the Yarmouth property, (2) the parties' pre-settlement negotiation process in which Louise's accountant estimated that the children's contribution to the Yarmouth property was 7.4% of the purchase price, (3) James's understanding that he agreed to give Louise his entire interest in the Yarmouth property in exchange for her payment of the $20,000 debt, and (4) Louise's understanding that the provision regarding payment of a percentage of the equity in the Yarmouth property was indeed tied to payment of the "Yarmouth" debt, but that it was intended as "a backstop" that would take effect only if James did not pay the debt.[2]

[¶ 12] The court did not err in determining that the incorporated agreement was ambiguous regarding payment of the Yarmouth debt and that Louise is responsible for the full payment of the $20,000 debt. The court's determination is objectively sup-

ported by the evidence in the record establishing that the incorporated agreement failed to provide for full payment of the $20,000 debt and that Louise was intended to take responsibility for such payment.

## II.

[¶ 13] James contends that the court erred in holding him responsible for the $11,000 debt to the children's Stein Roe account and argues that the settlement agreement requires Louise be held jointly responsible for paying that debt. We disagree. Unlike the $20,000 debt which the couple intended to address in the settlement agreement by linking it to the value of the Yarmouth property, there is no such provision in the settlement agreement that shows an intent to hold Louise responsible for the $11,000 debt. The court did not err in holding James responsible for his own withdrawals. That Louise and James did not apportion the debt in the settlement agreement does not affect the right of the children to have their funds returned.

## III.

[¶ 14] James contends that the court had no authority to hold him responsible for $10,-000 of the children's attorney fees or, alternatively, that Louise should be held jointly responsible for the fees. The children argue that the court erred by failing to order James to pay the full amount of their attorney fees.

[¶ 15] Although a prevailing litigant generally has no right to recover attorney fees, a court may award attorney fees for some kinds of tortious conduct, *F.D.I.C. v. Proia*, 663 A.2d 1252, 1255 (Me.1995), including a breach of a fiduciary duty. *Bernhard v. Farmers Ins. Exchange*, 915 P.2d 1285, 1289 (Colo.1996); *Shipston Assocs. v. Esselte Pendaflex Corp.*, 74 F.3d 1126, 1130 (11th Cir.1996) (applying Georgia law); *Hosey v. Burgess*, 319 Ark. 183, 890 S.W.2d 262, 267 (1995) (breach of trust).

---

2. Although subsection III(E)(3)(c) does not specify whether James or Louise is obligated to pay the children's share from the Yarmouth and Batavia properties, Louise apparently assumed responsibility for making those payments because she acquired the Yarmouth and Batavia properties as part of the settlement agreement.

[¶ 16] James breached his fiduciary duty to his children when he failed to repay the children's funds that he borrowed for his personal use. Parents are the natural guardians of their wards, 19 M.R.S.A. § 211 (1981), and, as such, owe them a fiduciary duty in regard to their property. *See, e.g., Estate of Peter C.,* 488 A.2d 468, 470 (Me. 1985) (citations omitted) (guardian has a fiduciary relationship with ward); *Cumberland v. Cumberland,* 564 So.2d 839, 847 (Miss.1990) (parent with custody of child receives child support payments as fiduciary for child and has duty to hold those funds for child's benefit); 67A C.J.S. Parent & Child § 113 (1978). Although James held the children's money in his own name, he does not dispute that the money belonged to the children. Thus, the court had discretion to award the children attorney fees when James breached his fiduciary duty by failing to repay the children's funds.

[¶ 17] The amount of attorney fees awarded is within the court's discretion and the court is accorded substantial defer-ence in its calculations. *Town of Freeport v. Ocean Farms of Maine, Inc.,* 633 A.2d 396, 399 (Me.1993). Nothing in the record shows that the court abused its discretion in holding James responsible for $10,000 of the children's fees. Furthermore, the court did not abuse its discretion by denying James's claim against Louise for a contribution to his payment of the children's fees. James breached his fiduciary duty when he failed to repay the children's funds; Louise did not participate in this failure and therefore should not be held responsible for the attorney fees generated to recover the funds.

The entry is:

Judgment affirmed.