1999 ME 92

**Deborah M. FITZGERALD**

v.

**Frederic H. GAMESTER et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 24, 1999.

Decided June 22, 1999.

---

274

Martha J. Harris, Paine, Lynch & Harris, P.A., Bangor, for plaintiff.

Michael A. Wiers, Hartland, (for Charles & Ethel Ziemba), Frederic H. Gamester, Carol Z. Gamester, Freedom, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Deborah M. Fitzgerald appeals from an amended judgment entered in the Superior Court (Penobscot County, *Marsano, J.*) clarifying a previous award of injunctive relief and reducing the rates at which the interest on the damages award should be calculated. Fitzgerald argues that the court erred in clarifying its judgment and in determining the rates at which to calculate the interest on the judgment. We affirm the judgment.

## I. BACKGROUND

[¶ 2] A detailed description of the facts giving rise to the underlying claims can be found in *Fitzgerald v. Gamester*, 658 A.2d 1065, 1067–69 (Me.1995). Briefly, they are as follows. In November 1987, Fitzgerald paid Charles and Ethel Ziemba and their daughter and son-in-law, Carol and Frederic Gamester (sellers), $99,000 for what she thought was 90 acres of land with a farmhouse on a lake in Dexter. She received a deed for 7.5 acres of land with no farmhouse and a contaminated well. Fitz-

gerald sued the sellers, alleging several claims, including fraud and misrepresentation.

[¶ 3] In December 1993, after a bench trial, the court found Charles Ziemba and Carol Gamester liable for fraud, awarding punitive damages of $15,000 against Ziemba and $25,000 against Gamester, and compensatory damages of $3500 against the sellers jointly and severally. As part of the injunctive relief, the court ordered the sellers to

> convey *approximately one-half of lot number 14* as shown upon Plaintiff's exhibit no. 3 which has not been built upon by Defendant Charles. (Emphasis added).

We affirmed that judgment in May 1995. *Fitzgerald*, 658 A.2d at 1070.

[¶ 4] Since 1995, the parties have been disputing the amount of land the sellers are required to convey to Fitzgerald and the amount of interest due on the damages award.

[¶ 5] The land dispute concerns the meaning of the phrase "approximately one-half of lot number 14" in the original judgment. Lot 14 was a lake-front lot containing a rustic camp. When Charles Ziemba showed Fitzgerald the property, he told

her that she would receive one-half of the lot. In her complaint filed in 1990, Fitzgerald attached a plan describing the land allegedly owed to her by the sellers. This plan showed Lot 14 divided into two lots. In 1991, Charles asked William Webber, a land surveyor, to subdivide Lot 14 into two lots. Webber divided Lot 14 into Lot 1 and Lot 2 so that both lots retained lakefront and the camp was on Lot 2. The dimensions of the two lots were essentially the same as the dimensions of the two lots described in Fitzgerald's original complaint. The Town of Dexter planning board approved the plan, and the Ziembas recorded the plan in the registry of deeds and conveyed Lot 1 to the Gamesters in 1992. After the December 1993 judgment, the sellers tendered to Fitzgerald a deed conveying Lot 1. Fitzgerald rejected the deed because it conveyed less than one-half of former Lot 14, and proposed a deed conveying one-half of the lot. The sellers, in turn, rejected this deed.

[¶ 6] Regarding the interest rate, Fitzgerald argues that prejudgment interest should be calculated at a rate of 8% pursuant to 14 M.R.S.A. § 1602(1)(A),[1] and that postjudgment interest should be calculated at a rate of 15% pursuant to 14 M.R.S.A. § 1602–A(1).[2] The sellers argue that pre-

---

1. Title 14 M.R.S.A. § 1602 (Supp.1998) provides in part:

    1. Prejudgment interest; rate; avoidance. In all civil actions, except those actions involving a contract or note which contains a provision relating to interest, prejudgment interest shall be assessed at a rate:

    A. For actions in which the damages claimed or awarded do not exceed the jurisdictional limit of the District Court set forth in Title 4, section 152, subsection 2, of 8% per year; and

    B. For other actions, equal to the coupon issue yield equivalent, as determined by the United States Secretary of the Treasury, of the average accepted auction price for the last auction of 52–week United States Treasury bills settled immediately prior to the date from which the interest is calculated under section 1602–A, plus 1%.

    . . . .

2. Title 14 M.R.S.A. § 1602–A (Supp.1998) provides in part:

    From and after the date of entry on an order of judgment, including the period of the pendency of an appeal, interest shall be allowed at a rate:

    1. Actions; District Court Jurisdictional limit. For actions in which the damages claimed or awarded do not exceed the jurisdictional limit of the District Court set forth in Title 4, section 152, of 15% per year; and

    2. Other Action. For other actions, equal to the coupon issue yield equivalent, as determined by the United States Secretary of the Treasury, of the average accepted auction price for the last auction of 52–week United States Treasury bills settled immediately prior to the date from which the interest is calculated, plus 7%.

    . . . .

judgment interest should be calculated at a rate of 4.61% pursuant to 14 M.R.S.A. § 1602(1)(B), and that postjudgment interest should be calculated at a rate of 10.61% pursuant to 14 M.R.S.A. § 1602–A(2).

[¶ 7]   In December 1993, Fitzgerald filed a request for prejudgment interest assessed at a rate of 8% pursuant to section 1602(1)(A).   After the Law Court decision in the first appeal, the trial court approved the request in October 1995.   On November 15, 1995, the clerk of the court issued writs of execution commanding the sellers to satisfy the judgment plus interest and costs.   Following the writs of execution, the sellers began to make payments to satisfy the final judgment plus interest.   The parties, however, continued to disagree as to the correct rates at which to calculate the interest.

[¶ 8]   In December 1997, the sellers filed a motion to clarify the December 1993 order, asking the court to determine the portion of Lot 14 they must transfer to Fitzgerald and the correct rates at which the prejudgment and postjudgment interest should be calculated. After a hearing, the court issued an order answering both of these questions:

(1) The court determined that the land described in the December 13, 1993, judgment as "approximately one-half of lot number 14," would be bounded according to the description of Lot 1 on Webber's 1991 subdivision of Lot 14;  and

(2) The court concluded that "[i]nterest should be calculated on the basis that the judgment exceeded the jurisdictional limit of the District Court."   In other words, the court agreed with the sellers that the prejudgment interest should be calculated pursuant to 14 M.R.S.A. § 1602(1)(B) and the postjudgment interest should be calculated pursuant to 14 M.R.S.A. § 1602–A(2).

[¶ 9]   Fitzgerald filed a timely appeal to this Court.

## II.   CLARIFICATION OF THE INJUNCTIVE RELIEF

[¶ 10]   Fitzgerald contends that the court erred when it amended the December 1993 order to convey Lot 1 rather than "approximately one-half" of Lot 14. The trial court "has the inherent and continuing authority to construe and clarify its judgment when that judgment is ambiguous."   *MacDonald v. MacDonald,* 582 A.2d 976, 977 (Me.1990).   To determine whether the trial court properly exercised its authority we must determine "(1) whether the court's prior judgment was ambiguous as a matter of law;  and (2) whether the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record."   *Id.* (citations omitted);   *see also Murphy v. Murphy,* 1997 ME 103, ¶ 8, 694 A.2d 932, 934.

[¶ 11]   The court properly exercised its authority to clarify the award of injunctive relief.   The December 13, 1993, judgment ordered the sellers to convey "approximately one-half" of Lot 14.   The term "approximately" is the essence of ambiguity.   The record supports the court's clarification of this ambiguous language.   The plan attached to Fitzgerald's original complaint shows Lot 14 divided into two lots. The dimensions of the lots are essentially the same as those in Webber's subdivision of Lot 14.   The court clarified its judgment to award Fitzgerald Lot 1 in Webber's subdivision.   Given that the court awarded Fitzgerald essentially what she requested in her complaint, the court did not err in its clarification of the 1993 judgment.

## III.   PREJUDGMENT AND POSTJUDGMENT IN- TEREST RATE

[¶ 12]   For both prejudgment and postjudgment interest, there are two possible rates by which the court calculates interest.   *See* 14 M.R.S.A. § 1602(1) (prejudgment rates);   14 M.R.S.A. § 1602–A (postjudgment rates).   The interest calcu-

lation depends in both instances on whether "the damages claimed or awarded do not exceed the jurisdictional limit of the District Court set forth in Title 4, section 152, subsection 2 ...." *See* section 1602(1)(A); section 1602–A(1).[3] The jurisdictional limit of the District Court is $30,000. *See* 4 M.R.S.A. § 152(2).[4]

[¶ 13] The damages awarded here total $43,500.[5] This total comprises three separate awards: an award of $15,000 against Charles Ziemba; an award of $25,000 against Carol Gamester; and an award of $3500 against the sellers jointly and severally. Although the awards total more than $30,000, none of the individual awards equals the limit. The issue, therefore, is whether to aggregate the awards when determining whether the amount awarded exceeds the jurisdictional limit of the District Court for the purpose of determining the rates at which to calculate the interest on the awards.

[¶ 14] We conclude that the damages awarded must be aggregated. Title 4 M.R.S.A. § 152(2) limits the jurisdiction of the District Court to "civil actions ... [where] the damages claimed do not exceed $30,000." The Maine Rules of Civil Procedure allow for a plaintiff in a civil action to freely join as many claims as the party has against an opposing party, *see* M.R. Civ. P. 18(a), and for a plaintiff to join multiple defendants under certain circumstances, *see* M.R. Civ. P. 20(a). The damages claimed or awarded in a civil action, therefore, potentially include the aggregate of the many claims joined against multiple defendants. Interpreted in light of the modern rules of joinder, we conclude that when section 152(2) refers to damages in "civil actions," it contemplates an aggregation of the damages. The court, therefore, did not err in concluding that the interest on the judgment should be calculated as though the amount awarded exceeded the jurisdictional limit of the District Court.

[¶ 15] When the court approved the request for prejudgment interest in 1995, it implicitly ordered that interest be calculated as though the amount awarded did not exceed the jurisdictional limit of the District Court. Fitzgerald argues that the court did not have the authority to amend this order. Contrary to Fitzgerald's contention, the court had the power pursuant to M.R. Civ. P. 60(a) to correct this calculation error "arising from oversight."

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the Superior Court or Law Court, and thereafter while the appeal is pending may be so corrected with leave of the Superior Court or Law Court.

M.R. Civ. P. 60(a).[6] *See Mockus v. Melanson,* 615 A.2d 245, 247–48 (Me.1992).

---

3. Section 1602–A(1) actually states "... the jurisdictional limit of the District Court set forth in Title 4, section 152 ...," omitting "subsection 2" after "section 152."

4. Title 4 M.R.S.A. § 152 (1989) provides in part:

   The District Court shall have jurisdiction in the following matters:

   ....

      2. Civil actions with damages claimed which do not exceed $30,000. Original jurisdiction, concurrent with that of the Superior Court, of all civil actions when no equitable relief is demanded and the damages claimed do not exceed $30,000 ....

5. Although the jurisdictional limit for the District Court speaks of "damages claimed," the interest statutes speak of "damages claimed or awarded." Given that no dollar amount may be "included in the demand in any civil case filed in Superior Court," we will look to the amount actually awarded to Fitzgerald. *See* 14 M.R.S.A. § 52 (Supp.1998).

6. The court may correct clerical mistakes or oversights at any time. Rule 60(a) may not, however, be used to collaterally attack a spe-

[¶ 16] Fitzgerald also challenges the court's decisions not to award her attorney fees, to admit a letter from her attorney to the Town of Dexter, and to prohibit her from testifying on certain issues in rebuttal. These contentions are without merit.

The entry is:

Judgment affirmed.

cific finding or conclusion of the court. If the parties had previously litigated the dispute regarding the correct rate of interest, with the result that the court concluded, even erroneously, that prejudgment interest would be awarded on the assumption that the damages awarded did not exceed the jurisdictional limits of the District Court, the court's decision on that rate of interest would be final (in the absence of an appeal) and could not later be amended pursuant to Rule 60(a). No such resolution of a dispute over interest rates is reflected in the record before us.