2000 ME 61

**Stephen B. AUSTIN**

v.

**Valerie A. AUSTIN.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 25, 2000.

Decided April 7, 2000.

---

Robert A. Laskoff, Laskoff & Associates, Lewiston, for plaintiff.

Coleman G. Coyne Jr., Murphy and Coyne, Lewiston, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, and DANA, JJ.

RUDMAN, J.

[¶ 1] Valerie A. Austin appeals from an order entered in the Superior Court (Androscoggin County, *Studstrup, J.*) partially denying her motion for enforcement of a divorce judgment. Valerie contends (1) that the court erred by permitting her former husband, Stephen B. Austin, to distribute to her the cash value of certain mutual funds instead of distributing shares of those funds to her; and, (2) that the court erred by not granting her post-judgment interest. We disagree that she was entitled to a distribution in kind, but vacate the judgment and remand for a determination of the value of the account on the

date of the distribution of Valerie's share to her.

## I. FACTS

[¶ 2] The Superior Court (Androscoggin County, *Marden, J.*) granted Stephen and Valerie a divorce on September 3, 1998. As part of the divorce decree, the court divided Stephen's 401(k) pension account equally between the two parties. The pertinent portion of the divorce judgment read: "The plaintiff's 401K pension account is agreed to have a balance of $341,-642. One-half of that account is awarded to the defendant. Defendant is to prepare a Qualified Domestic Relations Order [QDRO] for that purpose." The QDRO was needed to divide the 401(k) into two separate pension accounts with equal cash value: one for Valerie and one for Stephen.[1] At the time of the divorce judgment, the 401(k) account was invested in stock, mutual funds, and money market funds. Approximately one month after the entry of the divorce judgment, without consulting or notifying Valerie, Stephen changed the investments held in his 401(k) account by selling the mutual funds and reinvesting the proceeds in money market funds.

[¶ 3] Subsequent to Stephen's sale of the mutual funds, those funds appreciated in value. Valerie's financial planner testified that those equities gained approximately $18,487 in value during the five-month period following their sale. When Valerie submitted a proposed QDRO to Stephen's 401(k) fund administrator several months after the divorce judgment, she learned of the sale of the mutual funds and that her draft QDRO could not be used. Seeking, *inter alia,* her share of the 401(k) account and of the growth in value of the funds sold without her permission, Valerie brought a motion for enforcement of the divorce judgment. The Superior Court (Androscoggin County, *Studstrup, J.*) found that the 401(k) account was worth $348,950 on the effective date of the divorce judgment, and held that Valerie was entitled to one-half of that amount, or $174,475. The court did not award Valerie the increase in the value of the account between the date of the divorce and the date of the distribution, nor did the court award post-judgment interest on the delayed disbursement of Valerie's half of the 401(k) account. After the court denied her motion to reconsider the 401(k) account distribution, Valerie filed this instant appeal.

## II. DIVISION OF THE 401(k) ACCOUNT

■■■ [¶ 4] While courts do not have authority to alter or amend divorce judgments, "there is no question that the court has the inherent and continuing authority to construe and clarify its judgment when that judgment is ambiguous." *MacDonald v. MacDonald,* 582 A.2d 976, 977 (Me. 1990); *accord Greenwood v. Greenwood,* 2000 ME 37, ¶¶ 9–10, 746 A.2d 358. When faced with ambiguous prior orders, it is incumbent on a later court to reasonably interpret those previous orders. *See Raymond v. Raymond,* 480 A.2d 718, 721–22 (Me.1984). We employ a two-part, objective test when reviewing a trial court's order that attempts to clarify a divorce decree:

> (1) [W]hether the court's prior judgment was sufficiently ambiguous as a matter of law; and (2) whether the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record.

*MacDonald,* 582 A.2d at 977 (citations omitted); *see also Fitzgerald v. Gamester,* 1999 ME 92, ¶ 10, 732 A.2d 273, 276 (ap-

---

1. The division of the 401(k) account required the use of a QDRO because of the restrictions placed on pensions by the Internal Revenue Code and Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. § 1056(d) (1999). Without a QDRO, pension benefits may not be divided and distributed to a person other than the employee to which they originally accrued. *See id.*

plying this two-part objective test); *Murphy v. Murphy*, 1997 ME 103, ¶ 8, 694 A.2d 932, 934 (same). When a divorce judgment does not expressly determine a particular issue, the judgment will be construed by considering the intent of the divorce court. *See In re Reider*, 177 B.R. 412, 418–19 (Bankr.Me.1994) (applying Maine law); *Elliot v. Elliot*, 431 A.2d 55, 57 (Me.1981).

[¶ 5] The *MacDonald* test initially asks whether the divorce judgment was sufficiently ambiguous as a matter of law to require subsequent clarification. *See MacDonald*, 582 A.2d at 977. In this case, the divorce judgment was not ambiguous. The relevant portion of the divorce decree read: "The plaintiff's 401K pension account is agreed to have a balance of $341,-642. One-half of that account is awarded to the defendant. Defendant is to prepare a Qualified Domestic Relations Order for that purpose." Reading the preceding statement in context of the entire divorce judgment, it remains clear the divorce court sought to award Valerie one-half of the account, not one-half of the value of the account as of any particular date.

[¶ 6] The Superior Court agreed and found the following:

> Although the divorce court recited the balance in the account as of the date of the hearing, the award was not one-half of that balance but one-half of the account.

The Court then substituted a new order for the unambiguous order of the divorce court:

Given the vagaries of the stock market, this court concludes that the value of the account to be distributed should have been determined as of the date of the divorce and the defendant should have received one-half of this amount.

[¶ 7] It is clear that the original decree sought to award to Valerie one-half of the 401(k) account. The court, however, erred in fixing the date of valuation as the date of the decree, rather than the date of the actual division of the asset. Gains or losses in the account's value subsequent to the divorce belong to the parties in proportion to their share in the fund. Although Stephen had investment authority pursuant to the provisions of the trust establishing the account, he was not entitled to any more than his share of the fund's growth. As of the date of the decree, Valerie was entitled to one-half of the account. The court's order deprives her of her share of the fund's growth subsequent to the date of the decree. We therefore remand to the Superior Court in order that it may (1) establish the value of the account as of the date of distribution; and (2) award to Valerie her share of that fund and the income on any undistributed portion of the fund to the date of its final distribution to her.

### III. POST–JUDGMENT INTEREST

[¶ 8] A grant of post-judgment interest is based solely on statutory law. *See Allen v. Allen*, 629 A.2d 1228, 1230 (Me.1993); *Ginn v. Penobscot Co.*, 342 A.2d 270, 276 (Me.1975). The controlling statute for post-judgment interest is 14 M.R.S.A. § 1602–A (Supp.1999).[2] We re-

---

2. The post-judgment interest statute reads, in full:

§ 1602–A. Interest after judgment

From and after the date of entry on an order of judgment, including the period of the pendency of an appeal, interest shall be allowed at a rate:

1. Actions; District Court jurisdictional limit. For actions in which the damages claimed or awarded do not exceed the jurisdictional limit of the District Court set forth in Title 4, section 152, of 15% per year; and

2. Other action. For other actions, equal to the coupon issue yield equivalent, as determined by the United States Secretary of the Treasury, of the average accepted auction price for the last auction of 52–week United States Treasury bills settled immediately prior to the date from which the interest is calculated, plus 7%.

If the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days, interest shall be suspended for the duration of the continu-

view the trial court's construction of the post-judgment interest statute for errors of law. *Cf. Osgood v. Osgood,* 1997 ME 192, ¶ 7, 698 A.2d 1071, 1073 (referring to the prejudgment interest statute). Because statutory construction is a matter of law, we review decisions regarding the meaning of a statute de novo. *See Estate of Jacobs,* 1998 ME 233, ¶ 4, 719 A.2d 523, 524. "We look first to the plain meaning of the statutory language as a means of effecting the legislative intent. . . . We will not construe statutory language to effect absurd, illogical, or inconsistent results." *Coker v. City of Lewiston,* 1998 ME 93 ¶ 7, 710 A.2d 909, 910 (citations omitted); *accord Osgood,* ¶ 7, 698 A.2d at 1074.

[¶ 9] Section 1602–A permits the levying of post-judgment interest on the nonprevailing party "from and after the date of entry on an order of judgment." 14 M.R.S.A. § 1602–A. It also allows the nonprevailing party, upon a showing of good cause, to petition the trial court to fully or partially waive post-judgment interest. *See id.* In his response to Valerie's motion for reconsideration, Stephen asked the court not to "penalize" him for Valerie's delay in permitting the division of the 401(k) account. Stephen's written argument to the trial court implicitly asks the court to waive post-judgment interest for good cause—Valerie's several month delay in preparing a QDRO to divide the 401(k) account. Valerie argues that Stephen's argument about her delaying tactics is not a petition to waive interest as required by statute.[3]

 [¶ 10] We find that Stephen's request that he not be penalized for Valerie's dilatory conduct clearly encompasses a petition to waive interest for good cause, as permitted by section 1602–A. Although not the textbook example of how to lucidly word a petition to waive post-judgment interest, Stephen's argument notified both the court and the opposing party of his intention to avoid being taxed interest. The trial court's determination that this argument served as an appropriate waiver petition comports with the statutory language of section 1602–A; therefore, the court did not err as a matter of law. *See Coker,* ¶ 7, 710 A.2d at 910. The trial court then declined to charge Stephen post-judgment interest in response to his petition. Section 1602–A grants the trial court discretion to waive some or all of the post-judgment interest upon presentation of a petition and on a showing of good cause. *See Sawyer v. Walker,* 572 A.2d 498, 500 (Me.1990). The decision to waive interest here did not exceed the bounds of the court's discretion. The court's denial of interest was not plainly and unmistakably unjust considering Valerie's significant delay in submitting a proposed QDRO to the plan administrator. *See Harris v. PT Petro Corp.,* 650 A.2d 1346, 1348 (Me. 1994); *Beattie v. Beattie,* 650 A.2d 950, 951 (Me.1994).

The entry is:

Judgment vacated. Remanded to the Superior Court for a determination of the value of the 401(k) account as of the date of the distribution of the account and to award one-half of that amount to the de-

ance. *On petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section shall be fully or partially waived.* 14 M.R.S.A. § 1602–A (Supp.1999) (emphasis added).

3. Stephen's argument in his written response to Valerie's request for post-judgment interest on her share of the 401(k) account states:
 In addition, the Plaintiff [Stephen] should not be the one penalized for the Defendant's delay in this case. . . .

 In order to avoid this type of tactic by the Defendant[,] the Court in its Order of April 8, 1999[,] has chose an amount to be transferred and had the Court wished interest to be paid on that amount [it] would have so ordered. It is the Plaintiff's position that by not ordering interest, the Court had taken ·in to consideration the Defendant's tactics in this matter and has chosen not to penalize the Plaintiff for the Defendant's past and present actions.

fendant with her aliquot share of any income thereon subsequent to distribution.