**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**VILLAGE OF ALSIP, Defendant-Appellant.**

**No. 14649.**

United States Court of Appeals Seventh Circuit.

April 28, 1965.

Rehearing Denied May 26, 1965.

Henry A. Gentile, Blue Island, Ill., J. Edward Jones, Chicago, Ill., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division, Herbert Grossman, Attorney, U. S. Department of Justice, Washington, D. C., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., Lee A. Jackson, Joseph Kovner, Attorneys, Department of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

This action was brought by United States of America against defendants Alfred H. Rado and Joyce B. Rado (taxpayers), doing business as Homecraft Construction Company, and defendant Village of Alsip, Illinois (Alsip), pursuant to Section 7401 of the Internal Revenue Code of 1954, 26 U.S.C.A. It sought to recover unpaid income, withholding and Federal Insurance Contribution Act taxes which had been assessed against taxpayers.

Default judgment was entered against taxpayers in the amount of $130,927.05, plus interest and costs. Government moved for summary judgment against Alsip. This was granted in the amount of $65,324.50, plus interest from September 20, 1957 to January 13, 1964 of $24,751.73. The summary judgment order provided that $6,381.06, held by the clerk of the district court, be turned over to Government in partial satisfaction of the judgment and that Alsip could satisfy the judgment to the extent of $32,000 from proceeds to be paid to it from the City of Chicago. Alsip appealed.

The summary judgment against Alsip was entered on the complaint, answer, two discovery depositions and exhibits therein and an exhibit filed by Alsip.

This appeal is concerned only with the summary judgment against Alsip.

Prior to 1955, taxpayers purchased real property within the geographical limits of Alsip as a site for a residential subdivision. Taxpayers and Alsip desired to have the City of Chicago Water System extended into Alsip. Alsip advanced $48,000 to Chicago for the purpose of having Chicago extend its water system to the boundary between Chicago and Alsip. $32,000 of this amount was advanced by taxpayers to Alsip.

On November 15, 1955, Chicago and Alsip entered into a contract which provided that Alsip was to be repaid the $48,000, without interest, in amounts not to exceed 25% of the net monthly water billings from Chicago to Alsip. Taxpayers were to be refunded the $32,-000 advanced by them as Alsip received payments from Chicago.

On October 15, 1955, taxpayers contracted with Peter Santry, doing business as Santry Construction Company (Santry), for the extension of the water main from the boundary line between Chicago and Alsip to taxpayers' subdivision. Alsip supervised the bidding which resulted in this contract and required Santry to post a completion bond with Alsip. The contract included the following provision:

"It is understood the contractor (Santry Construction Company) is to look to the Homecraft Construction Company [taxpayers], 2136 West 51st Street, Chicago 9, Illinois, herein called the Owner, for payment of said work, and that the Village of Alsip is not to be liable in any manner for payment of said construction."

Alsip agreed to purchase this water main to be built by Santry from taxpayers at an amount Alsip's engineers certified to be due Santry. On or about October 6, 1955, Alsip's trustees adopted a resolution which provided for a bond issue to finance this purchase.

Upon completion of the water main extension, an engineer of Alsip certified that $59,644.58 was due Santry. Taxpayers paid Santry $28,600 but did not pay the balance, which was subsequently paid by Alsip.

On September 20, 1957, the District Director of Internal Revenue served on Alsip a notice of levy that a lien existed on all property or rights to property belonging to taxpayers and that any property, rights to property, moneys, credits, bank deposits or other obligations which Alsip had of taxpayers or owed to taxpayers were levied upon and seized for satisfaction of tax liabilities of taxpayers in the amount of $51,655.33, or such lesser sums as Alsip was indebted to taxpayers.

On December 12, 1957, a second notice was served on Alsip demanding an amount necessary to satisfy an additional liability of taxpayers of $29,269.22, or such lesser sum as Alsip was indebted to taxpayers.

At a special meeting on September 20, 1958, Alsip approved a waterworks bond issue to pay the cost of purchasing the water supply system from taxpayers. The bonds were issued December 1, 1958 in the principal amount of $50,000. Alsip provided that the additional money it was to pay taxpayers was to come from the water fund. Alsip had previously agreed to pay taxpayers $59,644.58.

On January 15, 1960, the District Director of Internal Revenue served final demands on Alsip, again demanding the sums due taxpayers.

By a resolution of February 20, 1960, the board of trustees of Alsip recognized the contract right of taxpayers to receive from Chicago the $32,000 taxpayers had advanced to Chicago. The resolution stated that the Internal Revenue Service was the beneficial owner of this contract right, valued in the resolution at $27,-898.94.

This resolution provided that since taxpayers had paid Santry only $28,600 of the $59,644.58 owed, Alsip would pay Santry the remaining sum of $31,044.58 out of proceeds of the bond issue. In February, 1960, Alsip paid Santry this amount.

Government's claim against Alsip was for $91,644.58. This amount included

$32,000 due taxpayers from Chicago and the $59,644.58 Alsip agreed to pay taxpayers for the purchase of the water system. Government conceded offsets to Alsip in the amount of $26,320.

Judgment was entered on Government's motion for summary judgment for Government's entire claim of $65,324.58, plus $24,751.73 interest at 6% from September 20, 1957 to January 13, 1964, for a total of $90,076.31.

The judgment against Alsip was computed as follows:

1. $32,000 — The sum advanced by taxpayers through Alsip to Chicago for extension of Chicago's water main.
2. $59,644.58 — This amount was certified by Alsip's engineer to be due Santry for construction of the water main extension and for convenience can be broken down as follows:
   A. $28,600 Paid by taxpayers to Santry.
   B. $31,044.58 Paid by Alsip to Santry.
3. $91,644.58 — Total
4. ($26,320) — This figure represents all offsets claimed by Alsip which taxpayers owed to Alsip and is broken down as follows: $15,300 for unpaid tap-on fees, $1,220 for repairs to improvements and $9,800 for installation of street lights.
5. $65,324.58 — Balance
6. $24,751.73 — Interest as above set out.
7. $90,076.31 — Total summary judgment.

---

The summary judgment order provided that $6,381.06, paid into the district court by Alsip for the benefit of the Internal Revenue Service, be turned over to Government in partial satisfaction of the judgment. This amount represents $4,101.06 Alsip received from Chicago pursuant to Chicago's agreement to repay the $32,000 (item No. 1, supra) advanced by taxpayers through Alsip and $2,280 which Alsip owed taxpayers pursuant to its agreement to purchase the water main extension built by Santry, less offsets taxpayers owed Alsip. (Item No. 2A minus item No. 4, supra).

We are thus not concerned with item No. 2A since it has been paid by Alsip to Government.

There is little dispute concerning item No. 1 ($32,000), since Alsip concedes Government is to receive this money as Alsip receives it from Chicago. Alsip states that it "has not refused to turn over such refunds [from Chicago] but stands ready and willing to turn them over [to Government] when received."

The summary judgment against Alsip included this $32,000 and provided that Alsip "may" satisfy this sum as it is received from Chicago.

Alsip did not owe this sum to taxpayers and was obligated to pay this money to taxpayers only as it was received from Chicago. As stated by Government in its brief, "Here, the payments received from Chicago were attributable to moneys advanced by the taxpayers themselves—not merely by others for their benefit. The Village [Alsip] has no colorable claim of right to ownership of these payments under any theory or equity. The record indicates undeniably that the Village [Alsip] was a mere conduit through which the funds were advanced by the taxpayers to the City of Chicago and had no right to retain to its own use and pos-

session the repayments made by Chicago of this advance."

Since Alsip was not liable to taxpayers, independent of receiving payments from Chicago, the last paragraph of the order of the district court should be modified to read as follows:

Ordered, Adjudged, and Decreed that the Village of Alsip shall satisfy this judgment to the extent of $32,000 as this amount is received from the City of Chicago under an agreement whereby this amount is to be paid to the Village of Alsip over a period of time. To the extent, if any, that the City of Chicago does not pay $32,000 to the Village of Alsip, the above judgment of $65,324.58 shall be reduced by such amount.

The only item in the summary judgment order which Alsip contends it does not owe Government is the $31,044.58 it paid to Santry (item No. 2B). The events surrounding this payment, set out supra, are as follows: taxpayers contracted with Santry to construct a water main extension; this contract provided that taxpayers and not Alsip were to be liable to Santry for payment of this construction; Alsip agreed to purchase this water main extension from taxpayers; taxpayers paid Santry $28,600 of a total of $59,644.58 due for the construction; and Alsip adopted a resolution and pursuant thereto paid Santry the unpaid amount owed Santry by taxpayers, $31,044.58.

Alsip contends it was not legally obligated to pay this sum to taxpayers and thus it had no property or rights to property of taxpayers to which Government's lien could attach. In the alternative, Alsip argues that assuming, *arguendo*, it was obligated to taxpayers, Santry had a lien against taxpayers superior to Government's and thus Alsip's payment to Santry was proper. State law determines whether Alsip was indebted to taxpayers. Aquilino v. United States, 363 U.S. 509, 512–514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); In re Halprin, 3 Cir., 280 F.2d 407, 409–410 (1960).

Government states that its theory does not rely upon oral or written agreements between Alsip and taxpayers. Rather, Government relies on Alsip's alleged ratification of its agreement to purchase the water system from taxpayers.

Government contends the following constituted ratification by Alsip: the resolution of October 6, 1955, proposing the bond issue to finance the purchase; approval of the bond issue on September 20, 1958; the issuance of bonds on December 1, 1958; the February 20, 1960 resolution authorizing the disbursement of a portion of the purchase price to Santry; and the disbursement of this sum to Santry.

Alsip argues that the alleged ratification is not binding upon it because Ill. Rev.Stat. ch. 24, § 9–47, which was in effect at the time the alleged indebtedness of Alsip to taxpayers was created, provided that a yea and nay vote of the board of trustees be taken and recorded in municipal records in order to create a liability against a municipality, and that there is no evidence that yea and nay votes were taken and recorded by Alsip in this case. In support of its argument Alsip cites People v. Chicago & N. W. Ry. Co., 396 Ill. 466, 468–469, 71 N.E.2d 701 (1947).

Government contends this Illinois statute and case apply only to *cities* and not to *villages*. Alsip is a village.

We do not decide this issue. Alsip did not challenge its own actions and resolutions in the district court which are relied upon by Government for ratification. This question is raised for the first time in this appeal.

Concerning Alsip's obligations to taxpayers, the district court had before it the following: Alsip's answer to Government's complaint admitting that "[a]lthough * * * Santry * * * was to look to * * * taxpayers for payment, the funds were ultimately to come from * * * Alsip which was to purchase the water main extension within its geographical limits from * * * taxpayers * * *"; Alsip's answer to

interrogatories admitting that "a motion or resolution was passed by the Village Trustees on or about October 6, 1955, relating to a bond issue to finance the purchase of the water main extension"; Alsip's accounting records admitted in evidence and indicating the passage of the waterworks bond issue on September 20, 1958, issuance of these bonds on December 1, 1958 and provision for payment of the additional $10,000 to taxpayers from the water fund.

■ On the basis of the evidence before the district court, we find no error in its determination that no factual issue existed as to whether Alsip was obligated to pay taxpayers for the waterworks system.

■ We hold Alsip's contention that under Illinois law it was not obligated to taxpayers since there was no evidence it followed the Illinois statute, above referred to, is not properly before us. United States v. Tyrrell, 7 Cir., 329 F. 2d 341 (1964). We will not set aside the summary judgment on an issue not before the district court.

In the alternative, we hold that assuming, *arguendo*, Alsip had raised the above issue in the district court, it is estopped to deny liability to taxpayers and is liable in assumpsit to taxpayers.

■ Under Illinois law, municipalities cannot be estopped from denying liability on contracts they had no power to make, De Kam v. City of Streator, 316 Ill. 123, 136–137, 146 N.E. 550 (1925), but they can be estopped to deny liability on contracts which are within their power to make, even though such contracts are irregularly made. Branigar v. Village of Riverdale, 396 Ill. 534, 542, 72 N.E.2d 201 (1947).

■ Alsip had the power to agree to and provide for construction of the water main extension and to agree to purchase it. See Ill.Rev.Stat. ch. 24, § 3–8 (1955). In May, 1960, Alsip took possession of the constructed water main extension. We hold it is now estopped to deny its liability to taxpayers for the agreed purchase price.

■ Further, Alsip was liable to taxpayers in an action in assumpsit. In Illinois, an action in assumpsit lies for money had and received when one party obtains money belonging to another, which in equity and good conscience it has no right to retain. Kearney v. Webb, 278 Ill. 17, 115 N.E. 844, 3 A.L.R. 1631 (1917); First Nat. Bank of Springfield v. Gatton, 172 Ill. 625, 50 N.E. 121 (1898). Such action will lie in the absence of privity, ibid., and may be maintained against a municipality. Board of Highway Com'rs v. Bloomington, 253 Ill. 164, 97 N.E. 280 (1912); Conway v. City of Chicago, 237 Ill. 128, 86 N.E. 619 (1908).

Alsip issued bonds in the principal amount of $50,000 to pay part of the purchase price of the constructed water system and Alsip's books of account indicate that the money so collected was held for that purpose. This money was owed by Alsip to taxpayers and would afford the basis for an action in assumpsit.

In the alternative, Alsip contends Santry had a lien against taxpayers for this money, superior to Government's lien and Alsip rightfully paid this money to Santry.

Ill.Rev.Stat. ch. 82, § 23 was in effect at all relevant times and provides, in essence, that any person who provides material or labor to any contractor having a contract for public improvement "shall have a lien on the money * * * due or to become due the contractor." The lien provided by this section is not on the improvement itself, as a mechanic's lien, but is on the fund due the contractor. McMillan v. Joseph H. Casey Co., 311 Ill. 584, 587, 143 N.E. 468 (1924).

Alsip argues that taxpayers were the contractors, Santry the subcontractor which furnished materials and labor and that Santry thereby had a lien superior to that of Government, under Illinois law.

■ Government "concedes that under normal construction contracts, the main contractor has no right to the payments for the work completed except to the extent that his right to payment exceeds the claims of subcontractors for labor and

materials supplied for that same work." However, Government asserts this is not a normal construction contract and Santry waived its right to a lien on the proceeds from Alsip. We agree.

As set out supra, the contract between taxpayers and Santry contained the following clause:

"It is understood the contractor (Santry Construction Company) is to look to the Homecraft Construction Company [taxpayers], 2136 West 51st Street, Chicago 9, Illinois, herein called the Owner, for payment of said work, and that *the Village of Alsip is not to be liable in any manner for payment of said construction.*" (Emphasis added.)

We hold this clause constituted a waiver of Santry's rights to payments by Alsip to taxpayers for the water main extension. As a result of this waiver, Santry was relegated to the position of a general creditor of taxpayers.

We conclude Government had a valid lien on the money Alsip owed taxpayers and Alsip improperly paid this money to Santry.

Alsip contends the district court erred in assessing interest against it and cites several Illinois cases to support this contention.

Section 6332(b) of the Internal Revenue Code of 1954, 26 U.S.C.A., provides:

"(b) Penalty for Violation.—Any person who fails or refuses to surrender as required by subsection (a) any property or rights to property, subject to levy, upon demand by the Secretary or his delegate, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes for the collection of which such levy has been made, together with costs and *interest* on such sum at the rate of 6 percent per annum from the date of such levy." (Emphasis added.)

Section 6332 is enforceable against municipalities. Sims v. United States, 359 U.S. 108, 79 S.Ct. 641, 3 L. Ed.2d 667 (1959); Commonwealth of Massachusetts v. United States, 1 Cir., 296 F.2d 336 (1961); Hoye v. United States, 9 Cir., 277 F.2d 116 (1960).

While Alsip is subject to interest charges, we hold it is not liable for the entire amount of interest assessed by the district court ($24,751.73). The district court computed the interest at 6% from September 20, 1957 (the date the District Director of Internal Revenue served the notice of levy on Alsip) to January 13, 1964 (the date of the judgment order by the district court) on the entire judgment of $65,324.58. Thus, Alsip was charged interest on the $32,000 which it was to receive from Chicago. We held, supra, that Alsip was liable to Government for this $32,000 only as it received repayments from Chicago. Accordingly, we hold that Alsip should not be charged interest on this sum and that the amount of interest should be reduced to $12,-626.82.[1]

This cause is remanded to the district court with directions to modify its judgment consistent with the views expressed herein, and such judgment as so modified is affirmed.

Affirmed as modified.

---

1. Alsip received $4,101.06 of the $32,000 from Chicago prior to the commencement of the action in the district court. We have not charged Alsip interest on this sum since Alsip, by resolution dated February 20, 1960, provided that the money "be disbursed directly to the Bureau of Internal Revenue, as the net amount of cash due under the levies heretofore filed."