2001 ME 128

**A.F.A.B., INC.**

v.

**TOWN OF OLD ORCHARD BEACH.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 29, 2001.

Decided: Aug. 1, 2001.

Neal L. Weinstein, Old Orchard Beach, for the plaintiff.

Gregory M. Cunningham, Bernstein, Shur, Sawyer & Nelson, Portland, for the defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] A.F.A.B., Inc. appeals from the judgment of the Superior Court (York County, *Fritzsche, J.*) granting in part and denying in part its motion for reissuance of a writ of execution. AFAB contends the court erred in reducing the writ by an amount paid by the Town of Old Orchard Beach to the Internal Revenue Service, and in failing to allow certain post-judgment interest. We affirm in part, and vacate in part.

## I. BACKGROUND

[¶ 2] This is the fourth time this case has been before us. We have set out the facts in prior opinions in this same action, *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 610 A.2d 747 (Me.1992) (*AFAB I*); *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103 (Me.1994) (*AFAB II*); *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 657 A.2d 323 (Me.1995) (*AFAB III*), and will repeat the facts only to the extent necessary to address the discrete issues raised on this appeal.

[¶ 3] In 1989, "A.F.A.B. Inc., d/b/a A.F.A.B. Construction" filed a complaint alleging breach of contract and unjust enrichment. This dispute arose out of a 1988 contract entered into by "Timothy Swenson d/b/a A.F.A.B. Construction, later incorporated as A.F.A.B. Inc." to perform repairs and renovations at the Ballpark in Old Orchard Beach. AFAB completed its work but was never fully compensated.

[¶ 4] On June 8, 1995, following *AFAB III*, a writ of execution issued stating "A.F.A.B. Inc. d/b/a A.F.A.B. Construc-

tion" recovered a judgment in the amount of $51,652.23 against the Town.[1] On September 20, 1995, before it paid the judgment, the Town received two notices of levy from the IRS indicating that "Timothy Swenson" and "Timothy Swenson AFAB Construction" owed a total of $36,807.76 in unpaid taxes. Six days later the Town paid this amount to the IRS.

[¶ 5] On that same date, the Town wrote a letter to counsel for AFAB stating that "[u]nder federal law, the Town is obligated to pay these amounts to the Internal Revenue Service, notwithstanding that the taxpayer may have a dispute with the IRS over the amounts due." The Town further stated that it would write a check for $14,844.47, the remaining amount due to AFAB, if AFAB signed a release "acknowledging that the judgment has been satisfied in full by the Town's payment to the IRS and payment to AFAB." AFAB did not sign a release, and the Town did not pay the balance of the judgment to AFAB.

[¶ 6] By August 30, 2000, AFAB, not having received any payment, filed a motion for reissuance of the writ of execution. The Town responded that the writ must be discounted by the amount it paid to the IRS, and that post-judgment interest accrued after its September 26, 1995 offer of payment should be waived. After hearing, the Superior Court issued an order on December 18, 2000 that: "A writ of execution may reissue in the amount of $14,854.47. This amount reflects the payment of the Internal Revenue Service liens."

## II. DISCUSSION

### A. Federal Tax Levy

[¶ 7] The Internal Revenue Code provides for the collection of unpaid taxes

---

1. This amount includes a $35,000 judgment, $12,429.62 in prejudgment interest, $4054.11

in post-judgment interest, and $168.50 in costs.

by administrative levy. 26 U.S.C.A. §§ 6331–6344 (1989 & Supp.2001).[2] This "expeditious administrative levy process," *Farr v. United States*, 990 F.2d 451, 455 (9th Cir.1993), allows the IRS to collect delinquent taxes without judicial intervention, *Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1221 (10th Cir.1998). *See also United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Section 6332 requires any person in possession of property on which a levy has been made to surrender it upon demand to the IRS. 26 U.S.C.A. § 6332(a) (Supp.2001). Only two defenses are available for a party who fails to comply with a tax levy: (1) a claim that the property in possession is subject to judicial attachment or execution, or (2) a claim that the property in possession is not the taxpayer's property. *Nat'l Bank of Commerce*, 472 U.S. at 721–22, 105 S.Ct. 2919; 26 U.S.C.A. § 6332(a).

■ [¶ 8] The Code provides incentives to comply with notices of levy. Any person who fails or refuses to surrender property subject to levy is liable to the IRS for the value of the property and an additional specified penalty if refusal is without reasonable cause.[3] *Id.* § 6332(d). On the other hand, a person who complies with a levy is discharged from any obligation or liability to the taxpayer and any other person with respect to the surrendered property. *Id.* § 6332(e). According to federal regulation, however, a person in

---

2. Section 6332 is the relevant section in this matter. It provides in pertinent part:

> **(a) Requirement.**—Except as otherwise provided in this section, any person in possession of ... property ... subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property ... to the Secretary, except such part of the property ... as is, at the time of such demand, subject to an attachment or execution under any judicial process.
> ....
> **(d) Enforcement of levy.—**
> **(1) Extent of personal liability.**—Any person who fails or refuses to surrender any property ... subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property ... not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate .... Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.
> **(2) Penalty for violation.**—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property ... fails or refuses to surrender such property ... without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.
> **(e) Effect of honoring levy.**—Any person in possession of ... property ... subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property ... to the Secretary ... shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property ... arising from such surrender or payment.

26 U.S.C.A. § 6332 (Supp.2001).

3. A "person," as defined by 26 U.S.C.A. § 6332(f) (Supp.2001), "includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to surrender the property or rights to property, or to discharge the obligation." Contrary to AFAB's assertion that the Town is not a "person" within the meaning of section 6332, this definition is given a broad interpretation and is applicable to municipalities. *See Sims v. United States*, 359 U.S. 108, 112, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959) ("Congress intended to and did include States within the term 'person' as used in § 6332."); *United States v. Village of Alsip*, 345 F.2d 365, 371 (7th Cir. 1965) ("Section 6332 is enforceable against municipalities.").

possession of property who mistakenly surrenders property in which the taxpayer has no apparent interest is not immune from suit by a third person who has an interest in the property. 26 C.F.R. § 301.6332–1(c)(2) (2000).[4]

[¶ 9] The appropriate remedy for one who believes a notice of levy to be wrongful is to surrender the property and bring an action against the federal government. *State Bank of Fraser v. United States*, 861 F.2d 954, 961 n. 6 (6th Cir. 1988). "[T]axpayers and third parties who have an interest in property surrendered in response to a levy may secure from the Internal Revenue Service the administrative relief provided for in section 6343(b) or may bring suit to recover the property under section 7426."[5] 26 C.F.R. § 301.6332–1(c)(3) (2000).

[¶ 10] In compliance with section 6332, the Town surrendered money to the IRS on receipt of the notices of levy. AFAB argues that because there is a judgment in favor of "A.F.A.B. Inc. d/b/a A.F.A.B. Construction," and the notices of levy name "Timothy Swenson" and "Timothy Swenson AFAB Construction" as the delinquent taxpayers, the Town did not possess property of the taxpayers and was not required to surrender the property.[6] Even assuming that the Town surrendered corporate property of A.F.A.B., Inc. for individual tax liabilities of Swenson, the appropriate remedy is administrative or legal relief against the IRS. Pursuant to section 6332, the Town was relieved of its

---

4. This section provides in relevant part:

> (2) *Exception for certain incorrectly surrendered property.* Any person who surrenders to the Internal Revenue Service property . . . not properly subject to levy in which the delinquent taxpayer has no apparent interest is not relieved of liability to a third party who has an interest in the property. However, if the delinquent taxpayer has an apparent interest in property . . . a person who makes a good faith determination that such property . . . in his or her possession has been levied upon by the Internal Revenue Service and who surrenders the property to the United States in response to the levy is relived [*sic*] of liability to a third party who has an interest in the property . . . even if it is subsequently determined that the property was not properly subject to levy.

26 C.F.R. § 301.6332–1(c)(2) (2000).

5. Section 6343, authorizing the release of levy and return of property, provides in relevant part:

> (b) **Return of property.**—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—
> (1) the specific property levied upon,
> (2) an amount of money equal to the amount of money levied upon, or
> (3) an amount of money equal to the amount of money received by the United States from the sale of the property.
> Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 9 months from the date of such levy.

26 U.S.C.A. § 6343(b) (Supp.2001). Section 7426, authorizing civil actions by persons other than taxpayers, provides in relevant part:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other that the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

26 U.S.C.A. § 7426(a)(1) (Supp.2001).

6. AFAB also argues the surrendered money was subject to "execution under . . . judicial process," as contemplated by section 6332(a), because $56,891.56 in the Town's possession was subject to a writ of execution in favor of AFAB. The judgment and writ of execution, however, did nothing more than create AFAB's interest in the money surrendered.

obligation with respect to the surrendered money, and the court did not err in reducing the writ by the amount paid to the IRS.

## B. Post–Judgment Interest

▆▆ [¶ 11] Title 14 M.R.S.A. § 1602–A (Supp.2000) [7] controls post-judgment interest. "We review the trial court's construction of the post-judgment interest statute for errors of law. Because statutory construction is a matter of law, we review decisions regarding the meaning of a statute de novo." *Austin v. Austin,* 2000 ME 61, ¶ 8, 748 A.2d 996, 999–1000.

▆▆ [¶ 12] "Post-judgment interest is an enforcement tool to ensure that, once litigants have successfully invoked the power of the courts, the award of just compensation will not be diminished by delay in payment." *Moholland v. Empire Fire & Marine Ins. Co.,* 2000 ME 26, ¶ 7, 746 A.2d 362, 365. "Section 1602–A permits the levying of post-judgment interest on the nonprevailing party 'from and after the date of entry on an order of judgment.'" *Austin,* 2000 ME 61, ¶ 9, 748 A.2d at 1000 (quoting section 1602–A). This section also "grants the trial court discretion to waive some or all of the post-judgment interest upon presentation of a petition [by the nonprevailing party] and on a showing of good cause." *Id.* ¶ 10, 748 A.2d at 1000.

▆▆ [¶ 13] The court exceeded the bounds of its discretion by waiving post-

judgment interest from September 26, 1995 to the present. AFAB completed the Ballpark repairs and renovations in 1988, and a judgment and writ of execution in favor of AFAB issued in June 1995. Although the Town promptly surrendered a portion of the judgment to the IRS in 1995, it has never paid any amount to AFAB. Further, the Town's offer to pay the remaining portion of the judgment if AFAB signed a release does not demonstrate good cause as the Town cannot condition payment of a judgment without the consent of the court. Given the Town's history of nonpayment, without post-judgment interest AFAB may not ever receive the money to which it is legally entitled.

The entry is:

Judgment reducing amount of writ of execution affirmed; judgment denying post-judgment interest vacated. Remanded to the Superior Court for calculation of post-judgment interest on $14,844.47 from September 26, 1995 to date.

SAUFLEY, J., dissents and files opinion joined by CLIFFORD and ALEXANDER, JJ.

SAUFLEY, J., with whom CLIFFORD and ALEXANDER, JJ., join, dissenting.

[¶ 14] I concur in the Court's analysis and conclusions with one exception. I do not agree with the Court's conclusion that the trial court exceeded the bounds of its discretion when it waived post-judgment

---

7. This section provides in relevant part:

From and after the date of entry on an order of judgment, including the period of the pendency of an appeal, interest shall be allowed at a rate:

. . . .

**2. Other action.** For other actions, equal to the coupon issue yield equivalent, as determined by the United States Secretary of the Treasury, of the average accepted auction price for the last auction of a 52–week United States Treasury bills settled immediately prior to the date from which the interest is calculated, plus 7%.

. . . .

On petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section shall be fully or partially waived.

14 M.R.S.A. § 1602–A (Supp.2000).

interest. Thus, I must respectfully dissent to part B of the Court's opinion.

[¶ 15] As the Court has accurately noted, post-judgment interest was created by the Legislature as an "enforcement tool" to provide motivation for the party ordered to pay over monies to do so promptly. There is no question that by delaying payment over time, the responsible party may succeed in diminishing the value of the successful party's award. The Legislature has, however, also authorized the trial court to waive the payment of post-judgment interest in whole or in part in instances where the nonprevailing party demonstrates good cause for that waiver. 14 M.R.S.A. § 1602–A.

[¶ 16] In the matter before us, the nonprevailing party did just that. It petitioned the court for a waiver of post-judgment interest. In support of that petition, the Town asserted that it had offered "complete satisfaction" to the plaintiff, and the plaintiff refused to accept that satisfaction. The Court has today concluded that the trial court exceeded the parameters of its discretion when it determined that the Town's offer of complete satisfaction, accompanied by a request that A.F.A.B. sign a release, does not demonstrate good cause.

[¶ 17] On the unusual facts of this case, I would defer to the exercise of the sound discretion of the trial judge on the question of good cause. We have made it clear that in those instances when a court is authorized to act upon its discretion, a decision either way may be affirmed if the court correctly understood the facts and law relevant to the exercise of that discretion. See Boit v. Brookstone Co., Inc., 641 A.2d 864, 865 (Me.1994). A court that is called upon to exercise its discretion must understand the factors and the law material to its decision, and must weigh the factors accordingly. We have consistently deferred to the court's ability to give weight to the appropriate factors and have found abuse only where the court has made a "serious mistake" in weighing those factors. See West Point–Pepperell, Inc. v. State Tax Assessor, 1997 ME 58, ¶ 7, 691 A.2d 1211, 1213 (quoting Coon v. Grenier, 867 F.2d 73, 78 (1st Cir.1989) (citation omitted)).

[¶ 18] No such serious mistake is present here. The record before the trial court chronicled a tale of extensive litigation. The litigation in this matter began in 1989. This is the fourth time that this case has been before us. The Town's desire to avoid further expense and litigation through a release was neither unreasonable nor unfounded. There is no dispute that the Town did, in fact, pay $36,807.76 to the federal government on the IRS lien and did, in fact, offer to pay to A.F.A.B. the entire remaining amount due so long as the A.F.A.B. signed a release acknowledging that the judgment it had obtained had been satisfied. Almost five years later, A.F.A.B. filed a petition for reissuance of the writ of execution. As the court has today concluded, the Town's tender of the remaining $14,844.47 to A.F.A.B. in 1995 represented a tender of the entire amount due to A.F.A.B. at that time. Thus, the legislative policy of providing a disincentive for delay of payment is not called into play here. A.F.A.B. chose not to accept the amount tendered and apparently chose not to take any further action for several years. On these facts, the court's determination that good cause existed for waiving post-judgment interest cannot be seen to exceed the bounds of its discretion.[8] I

8. Although the Town could have deposited the $14,844.47 with the court, pursuant to M.R. Civ. P. 67, there is no indication in this record that the Town's offer of the full amount to

would affirm the trial court's decision not to award post-judgment interest.

A.F.A.B. in September of 1995 was anything other than a good faith offer and that the Town was able and willing to immediately turn the monies over to A.F.A.B.