2005 ME 58

THE PROFIT RECOVERY
GROUP, USA, INC.

v.

COMMISSIONER, DEPARTMENT OF ADMINISTRATIVE AND FINANCIAL SERVICES et al.

Supreme Judicial Court of Maine.

Argued: Nov. 16, 2004.
Decided: May 4, 2005.

Jeffrey M. White, Margaret Minister O'Keefe (orally), Pierce Atwood, Portland, for plaintiff.

G. Steven Rowe, Attorney General, Christopher C. Taub, Asst. Atty. Gen. (orally), Susan P. Herman, Asst. Atty. Gen., Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] The Commissioner of the Maine Department of Administrative and Finan-

cial Services (DAFS)[1] appeals from a judgment in favor of The Profit Recovery Group, USA, Inc. (PRGU) for damages in the amount of $573,527.53, entered in the Superior Court (Kennebec County, *Studstrup, J.*) following a jury trial. The jury found that the parties entered into a contract and that DAFS breached the contract by refusing to pay PRGU its fee. DAFS contends that the court erred in denying its motions for judgment as a matter of law. DAFS claims that, as a matter of law, it did not have the authority to enter into the contract. DAFS also argues that the court erred in denying its motions for a mistrial and a new trial after a PRGU witness testified about settlement negotiations. PRGU cross-appeals the court's denial of pre- and post-judgment interest. We affirm the damages judgment, but we vacate the order denying interest.

## I. BACKGROUND

[¶ 2] In 1998, DAFS contracted with PRGU, with the stated objective of employing it to audit all State of Maine payments to vendors and service providers and to recover overpayments.[2] The contract was executed after DAFS requested and reviewed proposals from several entities. The contract states that PRGU will audit "one hundred percent of all accounts payable transactions" for the four-year period beginning July 1, 1994. PRGU agreed to provide the State Controller with a list of overpayments and supporting documents and explanations. PRGU was to be paid for its work on a contingency basis; that is, it was to receive percentages of recovered overpayments.

[¶ 3] Work under the contract began in November 1998. In early 1999, the State Controller notified the Commissioner of the Department of Human Services (DHS)[3] that PRGU would begin looking at Medicaid and other DHS accounts. A PRGU employee had several meetings with DHS employees, including the official who was charged with investigating Medicaid fraud and abuse. The DHS official was particularly interested in having PRGU look at Medicaid overpayments in the acquisition of durable equipment and the double billing by private nonmedical institutions, known as PNMI providers. Another DHS employee provided the PRGU employee with background information on PNMIs and PNMI billing and cost reports.

[¶ 4] After several days of reviewing PNMI cost reports at the DHS offices, PRGU found an overpayment by DHS of over one million dollars in 1996 made to one PNMI and an overpayment of over

---

1. The complaint named as defendants the people who, at the time the complaint was filed, held the positions of the Commissioner of the Maine Department of Administrative and Financial Services and the State Controller. Two substitutions of parties have been made since that time because the named people no longer held their positions. When a public officer is sued in his or her official capacity, the official can be described simply by referring to the title rather than the person's name. M.R. Civ. P. 25(d)(2). According to the docket entries, the judgment only runs against the Commissioner and not against the State Controller. As we have noted previously, an action for damages against a State official in his or her public capacity is, in essence, a suit against the State itself. *Drake v. Smith,* 390 A.2d 541, 543 (Me.1978).

2. The contract was executed with PRGU's predecessor-in-interest, Loder, Drew & Associates, Inc. The parties stipulated that PRGU has the authority to enforce the contract.

3. In 2004, the Legislature established the Department of Health and Human Services, which has subsumed the Department of Human Services and the Department of Behavioral and Developmental Services. P.L. 2004, ch. 689 (effective July 1, 2004).

one million dollars in 1997 made to the same PNMI. PRGU discovered these overpayments by comparing DHS interim payments to the final costs of the services. PRGU notified the State Controller and provided her with preliminary information regarding the overpayments. The State Controller notified the Commissioner of DHS, and after a meeting attended by the Commissioner and PRGU, PRGU was told to stop its work on the PNMI cost reports. The parties stipulated that the State recovered overpayments of approximately one million dollars each for 1996 and 1997 from the PNMI identified by PRGU.

[¶ 5] When DAFS refused to pay PRGU a fee for these two overpayments, PRGU filed a complaint in the Superior Court seeking the fee. Among other defenses, DAFS asserted that PRGU's claims were barred because DHS is the only state agency designated to handle Medicaid matters, and DHS did not authorize PRGU's services.

[¶ 6] At trial, during the cross-examination of a PRGU employee, DAFS asked the employee if he stood to make a lot of money if PRGU prevailed. He responded that he would receive $15,000, which was a smaller figure than he had given during his deposition. When DAFS asked him if he misspoke, he said that he had been paid part of his commission after settlement negotiations in anticipation that DAFS was going to make a substantial offer. DAFS objected, and the court sustained the objection and promptly instructed the jury to disregard the testimony. Later that day DAFS moved for a mistrial, but the court denied the motion. The next day DAFS renewed its request for a mistrial, which was also denied.

[¶ 7] At the close of PRGU's case, DAFS moved for judgment as a matter of law on the ground that the contract was unenforceable because the federal Medicaid statute and regulations prohibit DHS from delegating any power to DAFS to interpret or apply Medicaid regulations. The court denied the motion.

[¶ 8] The jury, finding that DAFS breached the contract, awarded PRGU damages of $573,527.53, and the court entered a judgment for PRGU in this amount. Thereafter, DAFS made two motions, which the court denied: (1) a motion for a new trial; and (2) a motion for judgment as a matter of law. DAFS also requested that the court waive any interest payments on the judgment on the ground that sovereign immunity bars the assessment of interest against the State. The court granted this request.

[¶ 9] Although DAFS raised numerous defenses before and at trial, DAFS appeals only two issues: (1) whether the court erred in denying its motions for judgment as a matter of law on the basis that the State Controller lacked authority to contract with PRGU for the work it performed regarding Medicaid overpayments because of the "single state agency" requirement of the federal Medicaid statute and regulations, 42 U.S.C.A. § 1396a(a)(5) (Supp.2004) and 42 C.F.R. § 431.10(e)(1) (2004); and (2) whether a mistrial should have been granted because of testimony alluding to a settlement offer in violation of M.R. Evid. 408. PRGU cross-appeals the denial of pre- and post-judgment interest.

## II. DISCUSSION

### A. Motions for Judgment as a Matter of Law

#### 1. Standard of Review

■ [¶ 10] We review de novo the denial of a motion for judgment as a matter of law, viewing all of the evidence in the light most favorable to the party opposing the motion. M.R. Civ. P. 50(a). Our task is to

determine whether the "jury could not reasonably find for [the party opposing the motion] on an issue that under the substantive law is an essential element of the claim." *Id.*

[¶ 11] The substantive law surrounding DAFS's defense of lack of authority to enter into the contract consists of the federal statutes and regulations governing the Medicaid program. According to DAFS, those statutes and regulations prohibited it from contracting with PRGU to perform the task of looking for DHS overpayments. Thus, we examine the relevant Medicaid statute and regulation and examine the application of the federal law to the contract at issue.

2. Medicaid

[¶ 12] Medicaid is a federal program that assists states in providing medical benefits to low-income persons. 42 U.S.C.A. § 1396 (2003). The federal agency that administers the Medicaid program and promulgates implementing regulations is contained within the United States Department of Health and Human Services (USDHHS). In order to receive federal dollars under the Medicaid program, Maine is required, as are all states, to designate a single state agency to administer the state Medicaid program. 42 U.S.C.A. § 1396a(a)(5). The single state agency requirement has been described as "a structural programmatic requirement that facilitates federal oversight of state Medicaid programs." *San Lazaro Ass'n, Inc. v. Connell,* 286 F.3d 1088, 1099 (9th Cir.2002). The legislative history of section 1396a, as described in *Sobky v. Smoley,* 855 F.Supp. 1123, 1145 (E.D.Cal.1994), demonstrates that administrative efficiency was a primary purpose behind the single state agency requirement.

[¶ 13] The single state agency in Maine that administers the Medicaid program is DHS. As the single state agency, DHS is prohibited from delegating authority to "[e]xercise administrative discretion in the administration or supervision of the [state Medicaid] plan." 42 C.F.R. § 431.10(e)(1). Although federal regulations permit other state or local agencies to perform services for the single state agency, the other agencies "must not have the authority to change or disapprove any administrative decision" of the single state agency, nor can other agencies "substitute their judgment" for that of the single state agency, regarding "the application of policies, rules and regulations" issued by the agency. 42 C.F.R. § 431.10(e)(3) (2004). The predecessor federal agency to USDHHS interpreted the single state agency to be subject to the ordinary relationships of the agency to the executive and legislative branches of state government, including budget and audit procedures. *See RCJ Med. Servs., Inc. v. Bonta,* 91 Cal.App.4th 986, 111 Cal.Rptr.2d 223, 230 (2001). The salient feature of the single state agency requirement is that the agency retains the ultimate authority to assure that the Medicaid program is administered according to the federal statutes and regulations. *Id.*

3. Application of the Single State Agency Requirement to These Facts

[¶ 14] Overpayments to a PNMI provider, which were discovered by PRGU, form the basis of PRGU's breach of contract claim against DAFS. A PNMI is a private nonmedical facility that receives Medicaid funds for services to Medicaid recipients. It does so by billing DHS, at an interim rate that is set forth in an agreement between DHS and the PNMI each year and is based on budgets submitted by the PNMI. At the conclusion of the fiscal period, the PNMI files a final cost report with the DHS Division of Audit.

The Division of Audit looks at the costs and documentation to determine whether the costs are real, that is, actually incurred. Occasionally, the auditor must review whether a cost is allowable under the Medicaid regulations. The auditor determines the final amount the PNMI is entitled to receive for the fiscal period. The auditor also calculates the amount of interim payments that the PNMI received during the fiscal period. The final amount is compared to the amount paid on the interim basis. If the final amount is more than the amounts paid to the PNMI under the interim rate, DHS owes the difference to the PNMI. On the other hand, if the final amount is less than the interim payments made to the PNMI, the PNMI owes the difference to DHS.

[¶ 15] The jury heard evidence that DHS was years behind in auditing the final cost reports. The jury also heard evidence about the several meetings between various DHS officials, employees, and PRGU representatives. The jury heard testimony about the access afforded to PRGU by DHS to the PNMI final cost reports and other data. The jury heard that although there were opportunities for DAFS and DHS to exclude Medicaid or other accounts from PRGU's purview, no restrictions or limitations were imposed.

[¶ 16] The very large overpayments to a PNMI at issue in this case were discovered by PRGU when comparing the interim payments with the final cost reports. PRGU did not apply Medicaid regulations or make any determinations as to what costs were allowable. Once PRGU discovered the overpayments, PRGU notified the State Controller with its preliminary report of the overpayments. Although PRGU had taken preliminary steps to verify the overpayments, it had not notified the PNMI about the overpayments or taken other steps to collect them. After PRGU gave the State Controller information about the overpayments, she contacted the DHS Commissioner, who after meeting with the Controller and a PRGU employee stopped PRGU from doing any further work on Medicaid accounts.

[¶ 17] DHS subsequently performed a final audit on the PNMI's cost reports and disallowed more than an additional two million dollars of costs; that is, it determined that the overpayments totaled over two million dollars for each year, in contrast to the one million dollar amounts that were found by PRGU. However, the PNMI appealed the DHS determination of overpayments, and after negotiations between the PNMI and DHS, the final amount of overpayments collected from the PNMI was close to the original figures discovered by PRGU.[4]

[¶ 18] DAFS contends that DHS, as the single state agency, is prohibited by the federal statutes and regulations from delegating or assigning the task of auditing to another state agency because auditing involves the interpretation of Medicaid regulations. Therefore, the argument goes, DHS could not delegate to DAFS, the authority to enter into a contract for PRGU to audit Medicaid cost reports. However, the review performed by PRGU of the PNMI cost reports did not involve the interpretation of Medicaid regulations or the supervision or administration of the Medicaid program. PRGU found the large discrepancy between the final cost reports and the amounts that had been paid to the PNMI in interim payments.

4. The PRGU review disclosed that the PNMI was overpaid by DHS in the amounts of $1,026,967 for 1996, and $1,123,827 for 1997. The subsequent DHS audit claimed that the PNMI was overpaid in the amounts of $2,003,002 for 1996, and $2,538,997 for 1997. The final settlement was $961,789 for 1996 and $1,097,713 for 1997.

PRGU did not substitute its judgment for that of DHS or usurp the functions of DHS. The contract between DAFS and PRGU did not violate the single state agency requirement of the federal Medicaid statute and regulations.

### B. Denial of Mistrial Motion

[¶ 19] DAFS's second ground for appeal is that the trial court erred in denying its motion for a mistrial after a PRGU employee testified, on cross-examination, about a settlement offer. We review the denial of a mistrial motion for abuse of discretion. *Taylor v. Lapomarda*, 1997 ME 216, ¶ 5, 702 A.2d 685, 687. The trial court is in the best position to assess the effect that improper information may have on the jury. When, as here, a curative instruction was given, we presume that the jury followed the instruction. *Theriault v. Swan*, 558 A.2d 369, 371 (Me.1989).

[¶ 20] On cross-examination of a PRGU employee, DAFS inquired how much money the employee would receive if PRGU prevailed in the case. When the employee's answer differed from an answer he had given to the same question at a deposition, DAFS asked whether he misspoke. The employee testified:

> [PRGU] decided to pay half of the commissions a couple of years ago based primarily on a meeting that we had here in Augusta with [the assistant attorney general] and a large number of other people in which the State said that they were going to make us an offer in settlement, and we interpreted that as being an indication that a substantial offer was going to be made, and we decided, since people had already done the work, we ought to pay them for it.

[¶ 21] DAFS objected on the ground that evidence of a settlement offer is inadmissible, M.R. Evid. 408(a), and the court sustained the objection. The court promptly gave a curative instruction:

> Ladies and gentlemen of the jury, before we go on, I have an instruction for you. There was an objection to the answer to the last question, and I have sustained that objection. I'm going to instruct you that you must disregard entirely the answer that [the witness] gave to that question, and particularly any reference at all to any discussions with [the assistant attorney general].

[¶ 22] Later in the day when DAFS moved for a mistrial on the basis of the testimony, it further objected to the evidence on the ground that the witness's statement about a settlement offer was not true. The following day DAFS renewed its motion for a mistrial, and the assistant attorney general, who had been referred to in the testimony, submitted an affidavit stating that no settlement offer had been made at the meeting referred to in the testimony. DAFS argued that the witness's statement was "stunning" and had a significant effect on the jury. The court stated its opinion that the testimony did not have a stunning effect on the jury and again denied the motion.

[¶ 23] Because the court was in a better position than we are to determine the effect of the testimony on the jury and because it acted promptly in telling the jury to disregard the statement, its further action in denying the motion for mistrial was well within the bounds of its discretion.

### C. Pre- and Post–Judgment Interest

[¶ 24] The statutes governing the assessment of interest on judgments provide that the court may grant a full or partial waiver of interest upon application of the nonprevailing party and for good cause. 14 M.R.S.A. §§ 1602(1), 1602–A(2)

(2003).[5] The court granted DAFS's request for a waiver of both pre-and post-judgment interest on the ground of sovereign immunity. We generally review the grant of a partial or full waiver of interest for abuse of discretion; where as here, the Superior Court declined to assess interest, not as matter of discretion but as a matter of law, we review its order de novo. *See A.F.A.B., Inc. v. Town of Old Orchard Beach*, 2001 ME 128, ¶¶ 11, 13, 777 A.2d 831, 836 (*AFAB IV*).

[¶ 25] DAFS concedes that sovereign immunity does not bar PRGU's breach of contract claim, but it argues that the Legislature has not waived sovereign immunity for an award of interest and that only the Legislature can determine when sovereign immunity is waived. The statutes authorizing interest on judgments do not mention the State or state agencies. 14 M.R.S.A. §§ 1602, 1602–A.

[¶ 26] PRGU acknowledges that there is no statute expressly waiving sovereign immunity for an award of interest, but it claims that when the State waives sovereign immunity for a breach of contract action, it also waives any immunity for interest on the judgment awarded in that contract action. Both parties have cited numerous cases from other jurisdictions, but none are particularly helpful. There are many cases holding that sovereign immunity bars an award of interest and many holding to the contrary.[6]

[¶ 27] The contract between PRGU and the State Controller is silent on the issue of pre- and post-judgment interest. The contract provides that Maine law governs the agreement and that any proceedings against the State regarding the contract have to be brought in Maine administrative or judicial forums.

[¶ 28] The State Controller has the authority to approve contracts and "incur financial obligations against the State Government." 5 M.R.S.A. § 1541(2) (2002). We have suggested that a general statute allowing the State to enter into contracts implies a waiver of sovereign immunity by the Legislature when the State is sued for breach of that contract. *See Drake v. Smith*, 390 A.2d 541, 545 (Me.1978).

[¶ 29] We have also held that a municipality does not have governmental immunity from damages for unjust enrichment, *see A.F.A.B., Inc. v. Town of Old Orchard Beach*, 657 A.2d 323, 324–25 (Me.1995) (*AFAB III*), and a municipality is liable for post-judgment interest on those damages,

---

5. Title 14 M.R.S.A. § 1602 (2003) has been repealed and replaced by P.L. 2003, ch. 460, §§ 4, 6 (effective July 1, 2003) (codified at 14 M.R.S.A. § 1602–B (Supp.2004)). Title 14 M.R.S.A. § 1602–A (2003) has been repealed and replaced by P.L. 2003, ch. 460, §§ 5, 6 (effective July 1, 2003) (codified at 14 M.R.S.A. § 1602–C (Supp.2004)). There were no substantive changes to the waiver provisions of the pre- and post-judgment statutes that are at issue in this case. Because P.L. 2003, ch. 460, § 13, states the new statutes "appl[y] to judgments entered on or after July 1, 2003," and the judgment in this case was entered on February 7, 2003, we apply 14 M.R.S.A. §§ 1602(1), 1602–A(2).

6. *See, e.g., Chapman v. Univ. of Mass. Med. Ctr.*, 423 Mass. 584, 670 N.E.2d 166, 169 (1996) (holding that an award of post-judgment interest is barred against the State in the absence of a statute specifically authorizing interest); *Architectural Woods, Inc. v. Wash.*, 92 Wash.2d 521, 598 P.2d 1372, 1375 (1979) (ruling that the State impliedly waives sovereign immunity when entering into an authorized contract and is liable for damages for breach as well as interest). Federal courts have ruled that where a state has waived its sovereign immunity by entering into a contract, or its immunity on the merits has otherwise been barred, sovereign immunity does not prevent an award of interest. *Entergy Ark., Inc. v. Neb.*, 358 F.3d 528, 556 (8th Cir.2004); *Reopell v. Mass.*, 936 F.2d 12, 15 (1st Cir.1991).

*see AFAB IV,* 2001 ME 128, ¶¶ 12, 13, 777 A.2d at 836. *AFAB IV* does not discuss governmental immunity as a basis for a denial of post-judgment interest, and the only issue appears to have been whether the trial court abused its discretion or made an error of law in waiving post-judgment interest. *Id.* However, governmental immunity was raised as a defense on the merits. *AFAB III,* 657 A.2d at 325; *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 105–06 (Me.1994) (*AFAB II*). It is apparent from the *AFAB* cases that a municipality that is liable in damages for unjust enrichment is also liable for post-judgment interest.

[¶ 30] The reasoning in *AFAB IV* is equally applicable to breach of contract matters. AFAB had no express contract with the municipality, which is why it had to proceed on a theory of unjust enrichment. *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 610 A.2d 747, 749 (Me.1992) (*AFAB I*). There seems to be little distinction between holding municipalities liable for post-judgment interest on unjust enrichment damages but not for a damage award for breaching an express, authorized contract.

■ [¶ 31] We have recognized that the doctrines of sovereign immunity, applicable to the State and its agencies, and governmental immunity, applicable to political subdivisions of the State, do not have the same rationale or history, but we have treated them similarly. *See Davies v. City of Bath,* 364 A.2d 1269, 1273 n. 9 (Me. 1976). Likewise, the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (2003 & Supp.2004), provides the State and political subdivisions with the same immunity from tort liability, and the same exceptions to immunity apply to both. 14 M.R.S.A. §§ 8102(2), 8103(1), 8104–A (2003). Although in certain contexts there may be a reason to differentiate sovereign immunity from governmental immunity, *see* 14 M.R.S.A. § 8118 (2003) (expressly maintaining Eleventh Amendment immunity to suits against the State), there is no logical basis for applying immunity for post-judgment interest against the State while making political subdivisions liable for the interest.

[¶ 32] In *AFAB IV,* we recognized that the purpose of post-judgment interest was to ensure payment of the judgment in a timely manner so that its value would not be eroded by delay. 2001 ME 128, ¶ 12, 777 A.2d at 836. That purpose is equally applicable to a monetary judgment against DAFS.

[¶ 33] Pre-judgment interest was not at issue in *AFAB IV.* In that case, the execution issued by the clerk against the Town of Old Orchard Beach included pre-judgment interest, *id.* ¶ 4 n. 1, 777 A.2d at 833, but there was no dispute about it on appeal. There is no rational basis for distinguishing between pre- and post-judgment interest as far as sovereign immunity is concerned, and, therefore, we agree with PRGU that sovereign immunity does not bar the award of either pre- or post-judgment interest.

[¶ 34] As an alternative ground for waiving partial pre-judgment interest, DAFS argues that PRGU's claim for breach of contract did not become ripe until the overpayment from the PNMI was actually collected by the State, and that collection occurred after PRGU's complaint was filed. The Superior Court did not reach this issue because it waived all interest on the basis of sovereign immunity. DAFS asks that, in the event we conclude that it is not immune from an assessment of pre-judgment interest, we remand the matter to the Superior Court so that it may determine when the pre-judgment interest begins to accrue. Because we are vacating the court's waiver of pre- and post-judgment interest, the matter is remanded for

the assessment of interest. We express no opinion on the merits of the accrual date argument.

The entry is:

Judgment affirmed. Court's order denying the assessment of pre- and post-judgment interest is vacated. Case remanded for assessment of interest.

ALEXANDER, J., dissents and files opinion in which SAUFLEY, C.J., and CLIFFORD, J., join.

ALEXANDER, J., with whom SAUFLEY, C.J., and CLIFFORD, J. join, dissenting.

[¶ 35] I concur in that portion of the Court's opinion addressing the State's appeal and affirming the jury award. I respectfully dissent from that portion of the Court's opinion addressing the PRGU cross-appeal and vacating the trial court's judgment by holding that a waiver of sovereign immunity and an obligation of the State to pay interest may be implied from statutes generally covering pre-judgment and post-judgment interest. The issue is significant. By the time this case is concluded, pre-judgment and post-judgment interest obligations, if applicable, may approach $200,000.

[¶ 36] The trial court's decision that the doctrine of sovereign immunity bars an award of interest must be reviewed in accordance with several principles of law that we have established. First, an award of interest is not an inherent part of any money judgment; any award of interest "is based solely on statutory law." *Austin v. Austin,* 2000 ME 61, ¶ 8, 748 A.2d 996, 999; *Ginn v. Penobscot Co.,* 342 A.2d 270, 276 (Me.1975).

[¶ 37] Second, statutory exceptions to sovereign immunity are strictly construed with immunity as the rule and any exceptions narrowly interpreted. *New Orleans Tanker Corp. v. Dep't of Transp.,* 1999 ME 67, ¶¶ 5–6, 728 A.2d 673, 675; *Lovejoy v. State,* 544 A.2d 750, 751 (Me.1988).

[¶ 38] Third, because sovereign immunity is "one of the highest attributes inherent in the nature of sovereignty[,] ... generally, a specific authority conferred by an enactment of the legislature is requisite if the sovereign is to be taken as having shed the protective mantle of immunity." *Cushing v. Cohen,* 420 A.2d 919, 923 (Me. 1980) (quotation marks omitted).

[¶ 39] Fourth, waiver of sovereign immunity will not be inferred by inaction, by procedural default, or by a general rather than a limited appearance in an action. *Maynard v. Comm'r of Corr.,* 681 A.2d 19, 22–23 (Me.1996); *Rutherford v. City of Portland,* 494 A.2d 673, 675 (Me.1985); *Drake v. Smith,* 390 A.2d 541, 543 (Me. 1978); *Turner v. Collins,* 390 A.2d 537, 540 (Me.1978).

[¶ 40] The contract at issue here obligated the State to make payments to PRGU, only on a contingent basis, at set percentages of funds recovered to the State as a result of PRGU's auditing activities. The contract included no provision for payment of interest. PRGU relies only on the general statutes authorizing recovery of interest in civil damages actions to support its claim for payment of pre-judgment and post-judgment interest. 14 M.R.S.A. §§ 1602, 1602–A (2003). There is no statute by which the Legislature has waived sovereign immunity to permit recovery of interest in addition to any damages award against the State. Thus, any authority to require the State to pay interest must be inferred.

[¶ 41] Our precedents, cited above, tell us that exceptions to or waiver of sovereign immunity must be specific and cannot be easily inferred. In *Turner v. Collins,* the predecessors to the same interest statutes at issue here were cited to support a claim for recovery of interest to add on to a statutorily limited damages award. *See*

390 A.2d at 539. We held that a statutory limitation in an authorization for a suit against the State did not, by implication, allow an award of interest in excess of the $250,000 limit, despite the existence of the generally applicable interest recovery statutes. *Id.* at 540. Thus, no waiver of sovereign immunity is provided by the general interest statutes. Any authorization to recover interest must be found from some source; it cannot derive from default, inference, or waiver. There is no source here authorizing recovery of interest. The State contracted to pay according to a schedule of contingent fees and nothing more.

[¶ 42] Citing *Drake,* 390 A.2d at 545, the Court states that: "We have suggested that a general statute allowing the State to enter into contracts implies a waiver of sovereign immunity by the Legislature when the State is sued for breach of that contract." This view may support PRGU's claim for payments earned in accordance with the contract, but it does not support expanding the State's contracted obligation to include interest. Further, noting adherence to the above view of the law in some other states, *Drake* states:

> In the case at bar we find no occasion to decide whether or not the law of Maine should recognize that a legislative waiver of the sovereign's immunity from suit may be found implicit in a general scheme plainly contemplating that the State will become party to particular kinds of contracts.

*Id.*

[¶ 43] The *Drake* opinion then goes on to state: "Hypothesizing, without holding, such an extension of Maine law, we conclude that on the facts of this case no such waiver by implication may justifiably be found." *Id.* Thus, the *Drake* opinion explicitly did not adopt the view stated by the Court. *Drake* construed that view as "an extension of Maine law."

[¶ 44] I concur with the Court that the statutory authority of the State to enter into the contract necessarily implies authority to allow a suit seeking payment for compensation earned pursuant to the contract. That payment recovery authority, however, does not extend to interest.

[¶ 45] The *AFAB* cases do not require payment of interest by a waiver of sovereign immunity. As the Court's opinion notes, in the earlier *AFAB* cases, *AFAB III*[7] and *AFAB II,*[8] sovereign immunity was raised only in relation to an overall defense to the damages claim, not as a separate discrete defense against an order for payment of interest—which the trial court had declined to order. *AFAB IV,*[9] over three dissents, awarded interest, but did so only on a finding that the trial court had erred in its finding that there was good cause to waive payment of interest pursuant to the interest statutes. Sovereign immunity was not discussed.

[¶ 46] Accordingly, I would conclude that absent express statutory authority, the trial court correctly denied the request for pre- and post-judgment interest. Without a demonstrated exception to the doctrine of sovereign immunity, the court lacked authority to order interest payments to be made by the State. Thus, I would affirm the judgment of the trial court in all respects.

---

7. *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 657 A.2d 323, 325 (Me.1995).

8. *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 105–06 (Me.1994).

9. *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 2001 ME 128, ¶¶ 11, 13, 777 A.2d 831, 836.